## ROOT *v.* E. N. WELCH MANUF'G Co.

*(Circuit Court, D. Connecticut.   ——, 1880.)*

1. PATENT—INVENTION.—Re-issued letters patent, dated August 3, 1875, for an improvement in clock dials, *held void*, upon the ground that the supposed invention was not a part of the thing patented.

*H. A. Seymour* and *Rodney Mason*, for plaintiff.

*Charles E. Mitchell* and *Richard D. Hubbard*, for defendant.

SHIPMAN, D. J. This is a bill in equity to restrain the defendant from the alleged infringement of re-issued letters patent, dated August 3, 1875, for an improvement in clock dials. The original patent was issued to the plaintiff on May 10, 1859, and was subsequently extended for seven years, from May 10, 1873. The plaintiff's invention was made in the spring of 1855. An application for a patent was filed on September 5, 1855, which was rejected, and was withdrawn on January 30, 1858. A renewed application was filed January 31, 1859.

Prior to the date of the plaintiff's invention, painted metallic dials were commonly used upon the ordinary wooden clocks, then and now largely manufactured in Connecticut. The painted surface of the dials was apt to crack, and much time was required to paint and dry them properly. For the purpose of avoiding these difficulties, the plaintiff made the invention which subsequently became the subject of his letters patent.

Paper dials were known prior to the date of the invention. Metallic backs, with a paper dial, the edge of the back being

turned over upon the paper so as to secure the paper to the back, were also known, and had been made by the Terry Manufacturing Company in 1854. The plaintiff's invention consisted in the combination of a paper dial, a back,—preferably of zinc,—and a metallic cap or frame or scalp, which united the back and the dial. The function of the cap or frame or scalp, as correctly described by the plaintiff's expert, was "to cover the edge of the dial by the inner edge of said frame, and hold the dial firmly against the back, so that its edge will not warp up or become displaced, while the outer edge of said frame is turned over and embraces the edge of the back, while the body of the scalp serves to unite these two edges, which I have described, and thereby the three parts, to-wit, the dial, the back, and the frame, are all held together, and constitute, as a whole, a clock dial." The patentee, after referring to the drawings, which show the form of the frame and of back, which will be described hereafter, says, in the re-issued specification, that the back may be made entirely flat, if desired. The dial may be made of the same diameter as the back, and the frame made plain and turned over the edges of the dial and the back, thus compressing them thoroughly together. When it is desired to make a moulding frame and back, the edge of the back is made nearly the shape of the frame. The dial B is made of such diameter as to just fill in between the raised portion from the flat surface of the back A. The frame or scalp C is placed over the dial B, and the edge D turned over the edge of the back A, and pressed together, thus firmly compressing the edge of the dial between the inner edge of the frame C and back A. The claims of the re-issued patent were as follows:

*First.* The combination of a metallic scalp, with a clock dial, substantially as and for the purpose described.

*Second.* The combination of a metallic scalp and zinc back, with a paper dial, substantially as and for the purpose shown.

*Third.* The combination of a zinc back, with a paper dial, substantially as and for the purpose set forth.

*Fourth.* The combination of metallic back and paper dial,

with a rim of "struck-up" sheet metal, substantially as and for the purpose described.

*Fifth.* As a new article of manufacture, the combination of a clock dial B, metallic back A, and frame C, substantially as and for the purpose set forth.

On December 24, 1877, and before this suit was brought, the plaintiff duly made and entered in the patent-office a disclaimer, whereby he disclaimed the third clause of the claim, and further disclaimed, as follows:

"Further, in the first and second clauses of said claim, wherein 'a metallic scalp' forms one of the elements of the combinations respectively covered by said claims, a disclaimer is hereby entered to a metallic scalp, broadly considered, and the scope of the claims is restricted to the combinations of parts specified in said first and second claims, when the metallic scalp therein specified is provided with lateral flanges on its outer and inner edges, substantially as illustrated in the drawings forming a part of said re-issued letters patent. Further, your petitioner enters a disclaimer to 'a rim of struck-up sheet metal,' broadly considered as entering into the fourth clause of claim, and restricts said claim to the combination of parts therein specified, when the 'rim of struck-up sheet metal,' therein specified, is formed on the edge of the metallic back, and serves to govern the position of the dial, substantially as illustrated in the drawings forming a part of said re-issued letters patent. Further, your petitioner enters a disclaimer to 'frame C,' broadly considered as entering into the combination of parts specified in the fifth clause of claim, and restricts the scope of said claim to the combination of parts therein specified, when the 'frame C' is provided with lateral flanges on its outer and inner edges, substantially as illustrated in the drawings of said re-issued letters patent."

The plaintiff stated in the disclaimer that he had secured claims in the re-issued patent which were too broad, and included that of which he was not the first inventor. He made the disclaimer in consequence of having seen a clock dial which had been sold by the Terry Manufacturing Com-

pany, and which he supposed preceded the date of his invention. In fact, the dial was made by himself in 1856. The drawings of the patent show that the inside edge of the frame covering the edge of the paper dial is a lateral flange. The outside part of the frame, which turns over the edge of the back, is also a lateral flange. I am of opinion that infringement of the first, second, and fifth claims is clearly proved, and that want of novelty is not proved. It is conceded that there is no infringement of the fourth claim.

The answer sets up divers defences. The only one which I think it is desirable to examine particularly is that "the supposed invention remaining after said disclaimer was not, and is not, a material part of the thing patented." The defendant says that the invention consisted in a combination of paper dial, back, and metallic frame or rim; that the shape of the rim was entirely a matter of taste, ornament, or convenience; that there is nothing functional in the form of the rim, and that the specification shows clearly that the form of the rim was an immaterial circumstance. The plaintiff says that the lateral flanges, and their offices, were shown in the drawings; that the office of the inside lateral flange was "to conceal the edge of the clock dial, and to furnish a flat annular seat against which the front of the dial rests, and by which it is held in position in such a manner as to prevent the dial from coming forward;" and that the office of the outer flange, in addition to its furnishing means by which to secure the scalp to the dial, was to furnish a flat seat upon which the whole dial is supported when placed against the front of a clock case, and through which seat screws may be inserted to secure the dial in place.

The disclaimer admits, in effect, that the patentee was not the first inventor of the combination of a paper dial, a back, and a metallic rim or frame not having lateral flanges on its outer and inner edges, but that this combination was old. It is also a fact that painted dials of one piece of metal, having an outwardly projecting lateral flange, which were secured to the clock case by screws drilled through this flange, were in common use prior to the date of the inven-

tion. The sash upon the door of the clock case was fastened by a catch to this flange. No objection is made to the form of the disclaimer. The question simply is whether there is anything in the specification of the patent, or outside of it, which shows that a material part of the invention consisted in the flanges upon the edges of the frame, as exhibited in the drawings, was an immaterial matter which did not partake of the character of invention. It must be remembered that the question is not whether the flanges perform a certain office, or whether the drawings exhibit the office, but it is whether there was any invention in the means for the performance of such office. The second deflecting plate, in *Dunbar* v. *Myers*, 94 U. S. 187, performed an office; but the court was of opinion that the addition of such second plate involved no invention. The "close chamber" and the "freezing mixture," in *Brown* v. *Piper*, 91 U. S. 37, performed the office of preserving fish; but the court was of opinion that the means used were an application of an old process to a new subject, without invention.

An inspection of both the re-issued and the surrendered patents, and of the rejected specification, shows that the flanges constituted no portion of the invention upon which the mind of the inventor rested as important. He says, in substance, that the back may be made plain, or may have a raised and then flattened edge. The dial may have the diameter of the back, or may be made of such diameter as to just fill in between the raised portion from the flat surface of the back. No patentable advantage is ascribed to one shape over another, or to any shape; and there is no suggestion of novelty in the method of attaching the clock dial to the case, or the sash to the frame. Furthermore, the backs of the painted dials, which were commonly used in wooden clocks at the date of the invention, were made substantially like the back of the dial shown in the drawings; that is to say, their edges were raised and then flattened, so as to give room for the hands inside the sunken portion of the dial, and so as to form a peripheral flange by which the back could be attached to the case. The patentee put a paper dial, upon which the

figures denoting the hours were printed, within the rim of the back, instead of having the figures painted upon the painted surface of the plate; and, in order to keep the paper dial in place, united it to the back by a metallic rim, one edge of which covered the edge of the dial, and the other edge was turned over the outside edge of the back. The shape of the rim was determined by the shape of the back which might be desirable in any particular style of clock, or as a matter of ornament. Flanges were not used, because they made a seat for attaching the dial to the case, but were used to conform to the old style of back, when that style, which had an old function of its own, was used. Given the two facts that a clock dial, with printed paper dial, a metallic back, and a metallic rim uniting the back and the paper dial, was old; and that a metallic back, with a lateral outside flange, through which screws were inserted to fasten the dial to the clock case, was commonly in use; was it any material part of the invention to make the rim to correspond generally with the old pattern of the back? I am of opinion that it was not; but that the shape of the rim was a matter merely of mechanical convenience. The inside lateral flange has the same offices which are performed by any edge of the rim, and the form is in the one which would be naturally adopted upon a sunken dial plate.

The bill should be dismissed.