### WRIGHT v. EIGHT HOUR TOBACCO CO.

(Circuit Court of Appeals, Sixth Circuit. August 3, 1918.)

#### No. 3110.

PATENTS ☞328—PATENTABLE NOVELTY—LABELING MACHINE.

Landfear & Keyes patent, No. 683,651, claim 22, covering a machine for applying labels and stamps to packages of tobacco or other material usually inclosed in paper wrappers, *held* void for lack of patentable novelty.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by Richard H. Wright against the Eight Hour Tobacco Company. From a decree for defendant, plaintiff appeals. Affirmed.

Melville Church, of Washington, D. C., and Allen & Allen, of Cincinnati, Ohio, for appellant.

Wm. W. Dodge, of Washington, D. C., Robert Fletcher Rogers, of New York City, and Wood & Wood, of Cincinnati, Ohio, for appellee.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

PER CURIAM. Appeal from decree adjudging claim 22 of patent No. 683,651, issued October 1, 1901, to William J. Landfear and

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James A. Keyes, assignors to Richard H. Wright, invalid, and dismissing the bill. It is stated in the specification that the invention relates to machines for applying labels and stamps to packages of tobacco or other material usually inclosed in paper wrappers. The specification, illustrated by 23 drawings, is elaborate, if not prolix, and is followed by 33 claims. The infringement alleged concerns only claim 22:

"The combination substantially as set forth, with devices for feeding stamps and applying paste thereto, of two paste rollers located at such distance apart that they will apply lines of paste to the opposite edges of a stamp when drawn in contact with their peripheries and means for reciprocating the feeding devices between the rollers to seize the stamp and draw it over them."

Whether, in view of the prior art, the device thus called for involves invention, as distinguished from mechanical skill, is a question of fact. The progress which had been made in this art was plainly suggestive of the device; indeed, our consideration of the record, including the exhibits, convinces us that what is claimed shows simply development of the skilled mechanic, and not patentable novelty. Dunbar v. Meyers, 94 U. S. 187, 195, 24 L. Ed. 34. We think it enough to add that the references pointed out and the reasons given in the opinion of the learned trial judge touching the lack of patentable novelty justify our conclusion. The decree will accordingly be affirmed. The portion of the opinion so alluded to follows:

HOLLISTER, District Judge. Suit brought on claim 22 of Landfear and Keyes patent, No. 683,651, issued October 1, 1901 (application filed December 31, 1900), relating to machines for applying labels and stamps to packages of tobacco or other commodity usually inclosed in paper wrappings (sometimes tin), claiming infringement and asking for injunction and damages. The usual defenses. The defendant is a user of three machines made by the manufacturer. Defendant's device infringes claim 22.

The only question is whether or not plaintiff's device involves invention. That it has, in the form adopted, as shown by the drawings and the purposes for which the device is used, novelty, in the sense that nothing exactly like it was made before, cannot be denied. Its usefulness, as is shown by the machine itself and attested by considerable public demand, as well as imitation by the manufacturer from whom the defendant obtained the infringing machines, is established. Nothing like it is found in the prior art; but I am not satisfied that its novelty raises the patented device to the dignity of an invention.

Patterson's patent No. 579,546, March 23, 1897, was excellent, and the first to apply a line or streak of paste to a government stamp by machinery as a part of the process of eventually causing the stamp to be wrapped about the package of tobacco as required by law. The process has the disadvantage of leaving an appreciable part of one end of the stamp free from paste, and the space between the line or streak of paste and the edges of the stamp also free. These disadvantages were real. One of them is overcome by afterward pasting a label around the package, and so covering the free end of the stamp. Its disadvantages are obvious, yet it was an important step in the art to which it relates.

Plaintiff's device is a great improvement, in that the nipper proceeds between the two paste rollers and seizes the stamp in such a way that, in pulling it from the stamp receptacle, both edges of the stamp, from end to end of it, receive the paste from the rollers. If there were nothing in the case but this, there would be no difficulty in finding that the faculty of invention had been actively employed. But there is much more. It must have been apparent to every one in the business of selling tobacco in packages, and to those interested in packing machines, of which there were a number, that it would be better if the paste were on the edges and the entire length of the stamp rather than applied as it was by Patterson.

The idea of doing it is found in Berger's patent, No. 643,621, of February 20, 1900, issued the same year in which the patent in suit was applied for, and prior thereto. There the nipper proceeds past the paste roller and grips the outside cover to be used in wrapping articles (for instance, chewing gum) in such a way as to pull one edge of the wrapper—certainly not more stiff than an internal revenue stamp—over the paste roller, and thus apply paste to one edge of the wrapper completely from end to end. There was no occasion for the use of two rollers in Berger's device. In fact, another would have been out of place; but to a man skilled in mechanics, studying the Berger patent, whose only problem was to paste the other edge of the paper, it would seem a very natural thought, without the operation of any inventive genius, to put another paste roller on the other side of the nipper, so that in the nipper's operation it would pull the paper across both rollers, and thereby cause the paste to adhere to both edges of the stamp throughout its entire length. It may be significant that the patentee's application was made within a year after Berger's patent was granted.

But this is not all one investigating the subject would have found in an analogous, if not directly prior, art. Pratt's patent No. 414,822, November 12, 1889, shows two paste rollers by which paste is applied at the outside edges at the full length of a piece of pasteboard to be used for the bottom of a box. It is true the pasteboard was pushed over the rollers, instead of being pulled; but it is also true that the pusher operated so far within the rollers as to cause the paste to be applied the entire length of the pasteboard. So the patentees had before them two ideas; one embodied in Berger's patent, and the other in Pratt's, as well as Patterson's invention, which required, in my judgment, no invention in applying them to a device of the purposes of plaintiff's. The thought of the skilled investigator would be directed, not to a new problem, but to how, mechanically, he could apply another roller to what was disclosed in Berger's patent in such a way as to have the paste applied to both edges of the stamp as it was to the pasteboard in Pratt's. Moreover, the investigator would have seen in Berger's patent, No. 643,623, of February 20, 1900, the nipper proceeding as far as the axis of a double roller, and between the rollers, although it is true those rollers were not for pasting purposes.

It seems to me what the patentee exercised was mechanical ingenuity, but not inventive ingenuity.