## MOTOR WHEEL CORPORATION v. HOFF-MAN.

Circuit Court of Appeals, Sixth Circuit.
July 6, 1928.

No. 4803.

Patents ⊚═328—1,353,161, for disk wheel for automobiles, claims 1, 2, and 8, held valid and infringed.

Patent No. 1,353,161, issued to Hoffman, for disk wheel for automobiles, claims 1, 2, and 8, *held* valid and infringed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Patent infringement suit by Roscoe C. Hoffman against the Motor Wheel Corporation. From a decree for plaintiff, defendant appeals. Affirmed, with directions regarding order of reference.

Lewis Thomas Greist, of Chicago, Ill. (Cromwell, Greist & Warden, of Chicago, Ill., and Whittemore, Hulbert, Whittemore & Belknap and Clarence B. Zewadski, all of Detroit, Mich., on the brief), for appellant.

George Rex Frye, of Detroit, Mich., for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

DENISON, Circuit Judge. This is the usual infringement suit, based on claims 1, 2, and 8 of patent No. 1,353,161, issued to Hoffman, for a disk wheel for automobiles. The District Court held that the patent was valid, and that these three claims were infringed.

The general construction was familiar, by which a metallic disk was substituted for the spokes of an automobile wheel. The disk was centrally carried by the hub, and peripherally carried a rim to receive the tire. The practical problem demanded the combination of the extremest possible strength and lightness. It was old to make this disk thickest at the center and tapering to the outside. It was old to support it by supplementary disks of less diameter, clamped at the hub either inside the main disk or outside, or both; the supplementary disks being at their outer edge riveted or welded to the main disk. It was old to support one side of the main disk by a supplementary disk, the edges of which were free. Hoffman for the first time employed two supplementary disks, one upon each side, and each having its edge free to bear against or move upon the surface of the main disk. His substantial theory of invention was that he produced a structure operating upon the theory of the leaves of a spring.

An obvious question of patentability is raised by the fact that, in a broad sense, Hoffman has only put upon both sides of the main disk supporting means familiar as applied to one side, and, ordinarily, patentability is not to be found in such duplication. Dunbar v. Myers, 94 U. S. 197, 24 L. Ed. 34. Counsel for appellant did not distinctly present or argue this view, and such lack of insistence tends to confirm the impression that there is something more than mere duplication. There are plain objections on the score of cost and weight against using a third disk, and the practical difficulty in finding a place for it in this assembly may have been great; we cannot assume it was easy. The character and extent of the shocks and strains to which an automobile wheel is subject are extraordi-

nary, and expedients suitable to ordinary mechanism may often be unsuitable in this field, and for that reason be naturally rejected by the skilled workman. To limit the lateral motion of the main disk, as would be done by the second support, might even be harmful. There is no evidence on this subject. It does appear that for many years a free-edge supporting disk had been used upon one side, originally in railway car wheels and later in disk automobile wheels, and that a considerable variety of patents had issued; but no one had ever undertaken to apply the support on both sides and under opposite tension. In this state of the record, we do not feel authorized to say that there was in the device nothing novel, except that mere duplication, which is obviously unpatentable. Herein we concur in the result reached by the district judge, after more elaborate discussion.

The question of infringement is the one chiefly argued. Claims 1 and 2 may be represented by claim 2, which reads: "A disk type wheel for vehicles, including a hub, a [rim] supporting disk secured on said hub, and a disk mounted adjacent to said supporting disk on each side thereof, and in free engagement therewith, for yieldingly reinforcing said supporting disk against lateral or radial stress." Claim 1 expresses the idea by calling for "yielding bracing means freely mounted adjacent to each side of said disk for resiliently bracing said disk." The phrases "resiliently bracing" and "yieldingly reinforcing" present the disputed question.

The defendant supports the inside of its main disk on the rear wheel, by so adjusting the parts and setting up the hub flange that the main disk is clamped under tension against the edge of the brake band. Clearly infringement is not avoided merely by this expedient. The cross-sections make it plain that defendant has an inner supporting disk mounted on the hub, adjacent to the inside of the main disk, and curved away and then back into free contact with the main disk, so that it appears to be the inner supplementary disk of the patent. The outer edge of this disk defendant turns horizontally and develops into the brake band, and the side of the disk becomes one side of the brake drum inclosure. As to the front wheels, this disk serves only the purpose of the corresponding one in the patent. On the rear wheels defendant uses the same disk modified as stated. The modification is important only if the disk thereby ceases to be a "yielding bracing means" or to serve the office of "yieldingly reinforcing" the main disk.

The defendant claims that the brake drum, as an entirety, is rigid. Tests accepted by the trial judge show that under a side strain there was relative motion, as between the disk and contacting point of the brake band, of one-tenth of an inch. This is plainly enough to constitute a yielding, as compared with a rigid, support at this point. Indeed, defendant's argument is centered on its outer disk, where the existence of yielding support is much more problematical. In shape the outer disk responds generally to the outer disk of the patent, save for its diameter. The patent drawing indicates an outer disk extending three or four inches from the edge of the hub flange. In defendant's form the extension is perhaps one inch. By reason of the lesser diameter the flexibility of the outer edge is minimized. Defendant says this quality has disappeared and has been supplanted by rigidity. Undoubtedly the resiliency is very small, and the relative motion as between the two disks, under a heavy lateral strain, is so little that for some purposes it would be negligible; yet in this assembly, in practical use, this amount of relative motion would or might shear the rivets or tear ordinary fastenings.

The distinction between an attached disk and one with free edges remains. The matter of resiliency must always be relative. If there is enough to be substantially useful, as distinguished from positive relative immobility, the function is performed, even though not so well as if the resiliency were greater. So far as we can see, defendant had no satisfactory reason for using this outside disk, and for using it in precisely the form it adopted, after considerable use of other forms, except to get the benefit of an outside support which, in connection with the shape of its main disk and the application of the inner support, would be yielding enough so as to lessen the dangers of absolute rigidity. The reason advanced is that it serves only as an enlargement of the hub flange, in order to adapt it to varying main disks. This reason is not convincing. The trial judge observed for two days extensive experiments and tests conducted by both parties in the laboratory and in open court, and reached the conclusion that the outer disk did give a substantial degree of resilient support, and that to do that was the purpose, or one of the purposes, of its specific form. We are not satisfied to overrule this specific conclusion, which is peculiarly one of fact; indeed, we strongly incline to the same conclusion.

There is rather less doubt as to claim 8. It calls for "resilient disks so dished as to be set up against opposite sides of the [rim] supporting disk under oppositely directed tension, whereby said [rim] supporting disk would be firmly braced and supported against lateral strain." In this claim the resiliency of the support is not expressly specified, though doubtless it must be implied that there is no rigid attachment at the edges of the smaller disks, because it is to be the dished shape which causes the functional action. The device, as so claimed, was new. The use of the dished form on opposite sides of the main disk to produce an oppositely directed tension is not shown in the prior art. Defendant's outer disk is distinctly of a dished form, following the dishing of the main disk, and when it is set up by the hub flange its outer edge we think does exert a tension on the main disk opposite to that exercised by the inner supporting disk or drum face. As to this claim, also, we agree with the trial court.

The decree is affirmed. The order of reference to the master should direct him that, if there is no established royalty, he shall ascertain and report what a reasonable royalty would be, in order that the court might have such a measure ready for use if desired.