**PAYNE FURNACE & SUPPLY CO., Inc., v. WILLIAMS–WALLACE CO.**

No. 9327.

Circuit Court of Appeals, Ninth Circuit.

Feb. 14, 1941.

MATHEWS, Circuit Judge, dissenting.

Lyon & Lyon, Frederick S. Lyon, and R. E. Caughey, all of Los Angeles, Cal., for appellant.

A. Donham Owen, of San Francisco, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from an interlocutory decree sustaining the validity of Letters Patent No. 2,013,193 of Stadtfeld and holding it infringed.

It is conceded that the patent, if valid, was infringed. The questions argued concern the validity of the patent and the effect of a disclaimer filed during the progress of the suit.

The Stadtfeld patent was granted September 3, 1935. The invention relates to improvements in composite pipe construction of the kind used in conveying gases or fluids of combustion. An object of the invention, as stated in the patent, is to provide a composite pipe consisting of an inner core pipe of non-corrosive material, preferably aluminum, an outer metallic pipe or casing spaced from the core pipe, and an intermediate filler of air cell heat insulating material interposed between the inner and outer pipes. The insulating material is described as having a plurality of air cells extending through it longitudinally. The specifications describe the core pipe as telescopically arranged with respect to the outer pipe and the insulating material.

The drawings of the patent, as elucidated in the specifications, depict a sectional flue pipe consisting of the three elements mentioned and show the manner of joining one section with another. One end of each pipe is crimped so as to provide a male end. The opposite end, untouched, provides the female end. Each section is assembled with the crimped end of the inner pipe adjacent to [opposite] the uncrimped end of the outer pipe. The crimped end of the inner pipe points downward to fit inside the end of the adjoining lower section, while the reverse is true in respect of the outer pipe, the crimped end of the outer pipe pointing upwardly to be inserted in the untouched end of the superimposed outer pipe. By these means, the specifications point out, moisture, such as rain, running down the exterior surface of the outer pipe, and condensates forming inside the inner pipe, are carried over the joints so that no moisture or corrosive fluid comes in contact with the insulating material either from the inside or from the outside of the composite structure. In assembling the sections, the crimped end of the inner tube of one section is pulled out far enough to facilitate its easy insertion into the uncrimped end! of the inner tube of the section below. Thereafter the adjacent end of the outer pipe of the section is more readily connected with its mate while the ends of the in-

ner pipes are maintained in connected relationship with each other. The telescopic arrangement of the inner pipe not only facilitates the joining of the sections but permits of cutting the sections to any desired length. The construction, as described in the specifications and pictured in the drawings, is thus seen to provide an independently supported inner tube insulated and spaced from the outer tube and slidable in the insulation.

The claims of the patent are as follows:

"1. A composite pipe construction comprising an outer tube, one or more layers of insulating material located around the inside surface of the said tube, and an inner tube slidably located inside the insulating material.

"2. A composite pipe construction comprising an outer tube, a layer of insulating material formed into a tube and positioned inside the outer tube with its outside surface in contact with the inner surface of the outer tube, and an inner tube slidably positioned inside the tube of insulating material with its outer surface in contact with the inner surface of the said tube of insulating material.

"3. A composite pipe construction comprising an inner core pipe, an external pipe spaced from the inner pipe, and insulating material interposed between the two pipes, the said pipes being telescopically arranged with respect to one another."

It will be seen that the claims do not advert to the matter of male and female fittings so as to provide leak-proof joints. Obviously, as witness the ordinary stovepipe, there is no novelty in a mere leak-proof flue pipe made up of sections having crimped and uncrimped ends. Nor do the claims specifically describe, although they suggest, the manner of assembling the sections together to form a flue pipe. The claims of a patent are to be understood and interpreted in the light of its specifications. Schriber-Schroth Company v. Cleveland Trust Co., December 9, 1940, 61 S.Ct. 235, 85 L.Ed. ——; Smith v. Snow et al., 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721; Jewell Filter Company v. Jackson, 8 Cir., 140 F. 340, 344. The invention disclosed, if invention there be, resides in the combination of known elements—namely, in a composite pipe section comprising an inner core pipe, an external pipe, and insulating material interposed between the two, plus the functional relationship of slidability of the inner pipe providing a construction in which, necessarily, the inner and outer stacks are supported independently of each other when the unit sections are joined together.

The combination claimed as invention is as simple as it has proved useful. The labor cost of installation is small. Secure joints are obtainable, thus lowering the fire hazard and preventing escape into the building of noxious fumes as well as preserving the life of the insulating material. The inner core stack, being insulated and of metal, heats rapidly and maintains its heat, thus producing a quick and adequate draft and at the same time preventing excessive condensation or deposit of the residual products of combustion, such as acids or soot.

The flue pipe art is old, yet has its problems; and it would seem that Stadtfeld's combination has overcome a number of important difficulties in this field. His pipe, as the trial court found, has gone into wide and successful use in the building industry. Appellant, with Stadtfeld's work before it, has manufactured and put on the market an exact copy, and in its advertising matter has proclaimed as novel the features relied on by the patentee as disclosing invention. Appellant contends here, however, that the device was anticipated, citing as examples of the prior art the patents to Savage No. 500,779 of 1893; O'Toole No. 878,014 of 1908; Hammill No. 311,750 of 1885; Aldrich No. 340,691 of 1886; Harvey No. 534,473 of 1895; Meade No. 1,428,294 of 1922; and Welch No. 1,927,105 of 1933. It cites, also, three installations in buildings in Los Angeles in which all the elements of the contested patent are said to be present.

We will notice the latter practice first. Only one of the Los Angeles installations is referred to in the brief and it is said to be typical. So far as we are able to understand it, this installation is a flue pipe consisting of a single tube, passed through a ventilated sleeve or thimble extended between the ceiling and the roof. No insulation is placed around the flue pipe at any point, the contrivance being designed to provide an air space around the pipe where it passes through the sleeve. The purpose of the ventilation is to cool the flue pipe. A different principle is involved in Stadtfeld's teaching. Los Alamitos Sugar Company v. Carroll, 9 Cir., 173 F. 280, 284. It seems to be conceded that the so-called Los

826

Angeles installations were banned some years ago by ordinance.

The Savage patent was issued in 1893 and the device appears never to have been used. It shows a chimney smoke-stack for use in connection with a fireplace. The flue pipe comprised an inner and outer tube with asbestos packing tamped or forced between them. The inner sections are spaced apart vertically to allow for expansion so that there is no continuous inner wall. The inner tube is not slidable in the insulation and there appear to be no means of assuring a proper alignment of the inner pipes. Too, these are supported only by the insulation which, in turn, is subject to shrinkage. The contrivance appears unworkable.

■ The other patents cited relate to a different art. Hammill and Aldrich show the familiar asbestos coating for steam pipes or boilers, the insulating material being wrapped around the pipes. The problem here is different and it is not contended that an insulated steam pipe would function as a flue pipe. The Meade patent shows a thimble, which is a device used to space a stovepipe away from a flooring or roof through which the flue passes. Harvey shows an underground conduit for steam or hot water. Welch's invention relates also to a water pipe. O'Toole's design relates to hot air or furnace pipes intended to confine heat during the process of transmission from furnace to register. None of these discloses apparatus suitable or useful as a flue pipe. In none are found in combination all the essential elements of the present patent. Prior patents "cannot be reconstructed in the light of the invention in suit, and then used as a part of the prior art." Mohr & Son v. Alliance Securities Company, 9 Cir., 14 F.2d 799, 800.

■■ Stadtfeld's improvement occurred within the confines of an ancient art. Its immediate and wide commercial adoption is powerful evidence of invention as contrasted with the exercise of mere mechanical ingenuity. Compare Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997. The patent is entitled to the presumption of validity; and the citations to the prior art fail to overcome the presumption.

We consider now the effect of a disclaimer made after joinder of issue in the suit below. The disclaimer was filed by appellee, as assignee of the patent, and reads as follows:

"Hereby makes disclaimer of any combination of the recited elements in claims 1 and 2, except for 'composite' 'sectional' pipes for conducting 'fluids or gases of combustion' and except when 'adjacent ends of the inner and outer pipes of each section' have 'male and female' ends with the male 'end of the inner pipe' 'located adjacent the female end of the outer pipe', and 'with the male end of an inner tube pointing downwardly and' adapted to be 'fitted inside the female end of the adjoining lower section' so that 'any condensates forming inside the said inner pipes are carried over the joint,' and 'with the male end of' the 'outer pipe of a section pointing upwardly and' adapted to be 'located inside the female end of the next higher pipe of another section', so that 'a joint is provided which sheds any exterior moisture running downwardly over the outer pipes', and the completed joints between 'adjacent ends' of adjoining sections 'of the inner and outer pipes' are in substantial radial alignment, and except when each string of connected pipe, outer and inner, is independently supported and 'maintained in connected relationship'; and except when the 'insulating material interposed between the two pipes' provides 'an intermediate filler' and 'has a plurality of air cells running longitudinally therethrough.'

"And hereby makes disclaimer of any combination of the recited elements in claim 3, except for 'composite' 'sectional' pipes for conducting 'fluids or gases of combustion' and except when 'adjacent ends of the inner and outer pipes of each section' have 'male and female' ends with the male 'end of the inner pipes' 'located adjacent the female end of the outer pipe', and 'with the male end of an inner tube pointing downwardly and' adapted to be 'fitted inside the femal end of the adjoining lower section' so that 'any condensates forming inside the said inner pipes are carried over the joint', and 'with the male end of' the 'outer pipe of a section pointing upwardly and' adapted to be 'located inside the female end of the next higher pipe of another section,' so that 'a joint is provided which sheds any exterior moisture running downwardly over the outer pipes', and the completed joints between 'adjacent ends' of adjoining sections 'of the inner and outer pipes' are in substantial radial alignment, and except when each string of connected pipe, outer

and inner, is independently supported and 'maintained in connected relationship'; and except when the 'insulating material interposed between the two pipes' provides 'an intermediate filler.'"

A disclaimer is authorized by R.S. § 4917, 35 U.S.C.A. § 65, providing that when "through inadvertence, accident, or mistake * * * a patentee has claimed more than that of which he was the * * * inventor * * * his patent shall be valid for all that part which is truly and justly his own," provided that he or his assigns "make disclaimer of such parts of the thing patented as he shall not choose to claim * * *." In Altoona Publix Theatres v. American Tri-Ergon Corporation, 294 U.S. 477, 55 S.Ct. 455, 460, 79 L.Ed. 1005, restating a familiar rule, the court said: "While this statute affords a wide scope for relinquishment by the patentee of part of the patent mistakenly claimed, where the effect is to restrict or curtail the monopoly of the patent, it does not permit the addition of a new element to the combination previously claimed, whereby the patent originally for one combination is transformed into a new and different one for the new combination."

In that case it was held that the disclaimer operated to add a new element, a flywheel, to each of the combinations described in the claims. It was thought that such change could validly be made only under the provisions of the re-issue statute, R.S. § 4916, 35 U.S.C.A. § 64, which authorizes the alteration of the invention in a re-issued patent upon the surrender of the old patent. Since the disclaimer was invalid, the original claims as they theretofore stood were held to fall with the disclaimer.

Appellant leans heavily on the Altoona Publix Theatres decision. It contends that appellee's disclaimer attempts to import into the patent elements lacking in the original claims; and that the disclaimer is, and must of necessity be, predicated upon an admission that the combination originally claimed is invalid.

It has many times been said that the disclaimer statute is remedial. In exercising the privilege granted by it the patentee is entitled to fair and liberal treatment so long as he imports no new element into his claims or does not attempt to broaden his invention beyond the conception as originally described. Carson v. American Smelting & Refining Co., 9 Cir., 4 F.2d 463, 469, 470. A disclaimer is not necessarily an admission that the patent would be void in the absence of the disclaimer. Permutit Co. v. Wadham, 6 Cir., 13 F.2d 454; N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co., 6 Cir., 56 F.2d 512. Inventors, it would appear, sometimes resort to the disclaimer statute as a matter of policy or precaution in the hope that they may thus forestall litigation, often with the result that more trouble is stirred up than avoided. Or they may be moved to disclaim because on reflection they fear that the claims are so broadly stated as to include a range of equivalents wider than the spirit of the invention justifies.

Numerous cases recognize the right to file disclaimers limiting the scope of the claims or confining the monopoly of the patent to a specific type of a general class. Dunbar v. Meyers, 94 U.S. 187, 193, 194, 24 L.Ed. 34; Minerals Separation v. Butte & S. Min. Co., 250 U.S. 336, 354, 39 S. Ct. 496, 63 L.Ed. 1019; United Chromium v. International Silver Co., 2 Cir., 60 F.2d 913, 914; Seiberling v. John E. Thropp's Sons Co., 3 Cir., 284 F. 746, 756, 757; Van Meter v. Irving Air Chute Co., D.C.N.Y., 27 F.2d 170, 172; Permutit Co. v. Wadham, 6 Cir., 13 F.2d 454, 457; N. O. Nelson Mfg. Co. v. F. E. Meyers & Bro. Co., 6 Cir., 29 F.2d 968, 969; N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co., 6 Cir., 56 F.2d 512, 513; Sachs v. Hartford, etc., Co., 2 Cir., 47 F.2d 743, 746; Byrne Mfg. Co. v. American Flange Co., 6 Cir., 87 F.2d 783; Metropolitan Device Corp. v. Cleveland, etc., Co., 6 Cir., 36 F.2d 477; Johnson Laboratories v. Meissner Mfg. Co., 7 Cir., 98 F.2d 937, 945; Cincinnati Rubber Mfg. Co. v. Stowe-Woodward, Inc., 6 Cir., 111 F.2d 239, 242. Counsel for appellant does not attack these cases as unsound or attempt to distinguish them. He simply ignores them. We do not understand that the Supreme Court in the Altoona Publix Theatres decision, supra, intended to overrule the many decisions upholding disclaimers of this character. We quote the footnote at page 490 of the opinion in 294 U.S., 55 S. Ct. at page 460, 79 L.Ed. 1005, omitting the citations there given: "The use of the disclaimer has been upheld where the elimination from the patent of the matter not relied upon did not operate to enlarge the monopoly of the patent, but narrowed it, as by eliminating in their entirety some of the claims of the patent, * * * or by

striking out an alternative method or device, * * * or by limitation of a claim or specification by deletion of unnecessary parts, * * * *or by limiting the claim to a specific type of the general class to which it was applied.*" (Emphasis supplied).

■ Part of appellant's argument is that the disclaimer here alters the original combination of a single unit pipe into one having a plurality of sections. We do not so understand the matter. The argument would require us to close our eyes entirely to the drawings and specifications of the patent. These have an explanatory or interpretative office not to be ignored. The patent discloses the inventor's conception of a composite pipe adapted—and manifestly intended—to be put together section on section to form a complete flue pipe. The drawings and specifications elucidate the claims in this respect so that no fair doubt remains concerning the nature and object of the combination invented.

After the disclaimer, as before, the combination consists of three elements, plus the functional feature of slidability. These elements, however, as modified by the disclaimer, have certain structural characteristics or limitations not mentioned in the claims. Each metal pipe has one crimped end in a designated alignment, and the insulation has "a plurality of air cells running longitudinally therethrough." The rest of the disclaimer, we think, is confined to matters of function. Do these limitations operate to import new elements so as to transform the original combination into a new and different one, as for example in the case of the flywheel in the combination involved in the Altoona Publix Theatres decision, supra?

■ The answer to the question is neither obvious nor easy, but we think it should be in the negative. The flywheel was a new part or mechanism. The limitations here are structural or functional. We are unable to read the disclaimer as attempting to do more than confine the claims to the specific environment already fixed in the specifications and drawings. By it the inventor undertakes to narrow the field of the claimed monopoly by introducing structural limitations taken directly from the specifications. This has been held proper in analogous situations. See particularly Byrne Mfg. Co. v. American Flange Co., supra; Metropolitan Device Corp. v. Cleveland, etc., Co., supra. The Byrne Mfg. Co. case, especially, is on all

fours with the present. It has been followed not only by the same court, Cincinnati Rubber Mfg. Co. v. Stowe-Woodward Inc., supra, but cited with approval on this point and followed by the Court of Appeals of the Seventh Circuit in Johnson Laboratories, Inc., v. Meissner Mfg. Co., supra. As already noted, appellant does not assail these decisions or attempt to distinguish them.

Perhaps the general language of Stadtfeld's claims might have been thought so broad as to cover devices other than the one particularly described in the specifications, and this possibility suggests the reason for the disclaimer. The patentee appears to have been moved by the desire to disclaim any monopoly in his composite pipe save when used for the purpose and assembled in the precise manner fully described in his specifications. We doubt the disclaimer was necessary, for these limitations were already implicit in the spirit of the invention claimed. But no one has been prejudiced by the disclaimer. An innocuous gesture of this sort ought not compel the penalizing of the inventor by striking down a meritorious invention. That course, we think, would pervert the benign purpose of the statute, converting it from a shield in the hands of the inventor to a sword in the possession of his adversary. It is hardly necessary to add that there was no unreasonable delay in filing the disclaimer.

■ Finally, appellant contends that the patent is invalid for the asserted reason that appellee has by the disclaimer attempted to claim as patentable invention the subject-matter of claims presented in the application and rejected by the patent office. The argument assumes a premise disposed of above. It relates to claims 3, 4, 5 and 8 of the original application, which included references to male and female fittings at the ends of the inner and outer tubes. These claims were rejected by the patent office. Claims 3, 4 and 5 did not include the feature of slidability of the inner pipe, and claim 8 contained neither the element of insulation nor the slidability feature. The trial court properly found that the allowed claims, as narrowed in scope by the qualifying disclaimer, are not like any claim abandoned during the prosecution of the application. The rejected claims were for different combinations, and as we understand it any estoppel could extend no further than to the canceled com-

binations. Johnson Co. v. Philad Co., 9 Cir., 96 F.2d 442, 444.

Affirmed.

MATHEWS, Circuit Judge (dissenting).

All claims of the patent are invalid for lack of novelty. The so-called disclaimer is such in name only. Instead of disclaiming the whole or a part of one or more of the three combinations claimed in the patent, it describes and claims three new combinations. This the law does not permit. The judgment should be reversed and the case should be remanded for dismissal.