MILCOR STEEL CO. v. GEORGE A. FULLER CO. et al.

No. 335.

Circuit Court of Appeals, Second Circuit.
July 31, 1941.

Writ of Certiorari Granted Dec. 8, 1941.

See 62 S.Ct. 360, 86 L.Ed. ——.

George L. Wilkinson, of Chicago, Ill., and Mock & Blum, of New York City (Asher

Blum, of New York City, of counsel), for appellant.

Malcolm K. Buckley and Conrad Christel, both of Buffalo, N. Y., and Kenyon & Kenyon, of New York City, for appellees.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a summary judgment dismissing the complaint in an action for the infringement of claims six and seven of Patent No. 2,105,770, issued on January 18, 1938, to Harry Holdsworth, and by him assigned to the plaintiff. The suit was brought on June 22, 1939, and the defendant answered on August 18th. On November 28, 1939, the plaintiff, as assignee of Holdsworth, filed disclaimers as to claims six and seven; and the motion for summary judgment was upon the ground that the disclaimers were invalid and resulted in the abandonment of the claims in suit. So the judge held and the plaintiff appeals. This being a question vital to the action, it was proper to decide it upon an application for summary judgment under Rule 56(b) Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Some description of the specifications and claims is needed for its understanding.

The invention is for a metal wall or partition, the body of which is to be of lathing covered with plaster. The lathing is supported by three members: a metal base, a metal top, and metal struts set at intervals and supporting the top. The base is a horizontal "flat metal strapping," running parallel with the floor and nailed to it in places, but, for the greater part of its course running a little above the floor, and folded downwards at intervals to form a series of recesses. The top member consists of an angle iron, one side of which lies close against the ceiling to which it is nailed; the other side is a "vertically depending flange." The struts are metal "channel irons," made up of a central "web" with its two edges bent in the same direction to a right angle; the "web" has a slot at the top capable of receiving the "depending flange" of the top member. That "flange" has a series of staggered openings punched out in the metal which make "projecting burrs." The structure is assembled by inserting the "depending flange" of the top member into the slot in the "web" of a strut while it is in an oblique position. The end of the strut must be inserted between two opposite "project-ing burrs," so that, as it gradually straightens, it touches, or nearly touches, a "burr" at either side, which hold its top in substantially fixed position. As the strut comes to the vertical position, its lower end can also be inserted into one of the recesses of the base. Thus the strut is held in place at either end, and the three members form an open skeleton to which the metal lathing may be wired. The patent issued with seven claims, of which claims six and seven before the disclaimer read as follows:

"6. A wall construction for a room having a floor and a ceiling, said wall construction including a base member and a ceiling member, said wall construction also including upstanding wall-supports whose height is less than the maximum vertical distance between said base member and said ceiling member, said upstanding wall supports being located between said base member and said ceiling member, said wall supports being vertically movable relative to said base member and to said ceiling member when said wall supports are assembled with said base member and said ceiling member, and means operative to prevent any substantial tilting movement of said wall supports from their predetermined upstanding position.

"7. A wall construction for a room having a floor and a ceiling, said wall construction including a base member and a ceiling member, said wall construction also including upstanding wall-supports whose height is less than the maximum vertical distance between said base member and said ceiling member, said upstanding wall supports being located between said base member and said ceiling member, said wall supports being vertically movable relative to said base member and to said ceiling member when said wall supports are assembled with said base member and said ceiling member, said base member and said ceiling member being shaped to provide means which are operative to prevent any substantial tilting of said wall supports from their predetermined upstanding position."

It will be observed that there is no difference between these two claims except that the last element of claim six is limited, so that "the means" to prevent tilting appear in claim seven as "said base member and said ceiling member." The disclaimer to claim six disclaimed any scope for the claim except when the ceiling member comprises a "vertical depending perforated flange, one side of which is overlapped by metal lathe;" and the disclaimer to claim

seven disclaimed any scope for that claim except when the base member is "composed of a longitudinal strip having recesses to receive the lower ends of the webs of channel wall supports, the flanges of the channel wall supports overlapping the base member adjacent the recesses." The result of the disclaimers was therefore to add to claim six a new element: "the depending perforated flange," and to claim seven also a new element: "the recesses to receive the bottoms of the channel irons." Both these features appeared in the figures and were adequately described in the specifications.

■ Its claims are of course the measure of the patent monopoly; the statute requires the patentee "particularly" to "point out and distinctly claim the part * * * which he claims as his invention." § 33, Title 35, U.S.C.A. All else in his disclosure he abandons to the public; out of all the possible permutations of elements which can be made from the specifications, he reserves for himself only those contained in the claims. Every claim consists of stated elements, and the fewer these are, the more comprehensive it is. All this is obvious and trite, and it would be needless to repeat it, were it not that courts have often spoken as though among this type of disclaimer there was a class which "add a new element" and are for that reason invalid (apparently because they extend the claim) and a class which do not and therefore are valid. This seems to us demonstrably untrue. Every such disclaimer, i. e. every one which does not surrender the whole claim, must "add a new element" to be a disclaimer at all; it must declare that the claim shall cover no longer a part of those objects which it formerly did cover, and it can do this in no other way than by adding a new element to the claim. There would indeed be no objection to this, if it did no more than contract the claim, for the argument is not valid that the Patent Office did not grant the claim in the form in which it stands after disclaimer. Of course it did not, but it did decide that the patentee might monopolize all that the original claim defined, and in so doing it inevitably decided that he might monopolize all species of that genus; the whole includes the parts.

■ But if that were the only effect of such a disclaimer, it would never be made for it would then merely surrender part of a valid monopoly, which no patentee would willingly do. The patentee files it because he fears that the claim as it stands may be invalid and hopes in this way to sustain it. This should never have been countenanced, for the original claims in this way become mere traps. The art has the same reason as the patentee for supposing that they are invalid, and it may in fact act in reliance upon that supposition, as it is altogether justified in doing. The disclaimer, if it proves successful, will not only disappoint that reliance for the future, but it will make the art infringe ab initio so far as it may have disregarded the claim. If it be urged that this should be a defence, personal to any particular infringer, which he should be compelled to prove, we answer that the claim by hypothesis has been withdrawn as invalid or doubtful; the patentee has forfeited it; and that nobody should be held accountable for infringing it. If a new claim is to take its place, the Patent Office should examine how far the art may have acted in reliance upon the invalidity of the old claim, and what excuse the patentee had for claiming so much originally. The new claims are in truth no less than reissued claims. Moreover, like reissues, they should certainly not be retroactive. Patentees do not need such protection. If they succeed in getting a broad claim whose validity they doubt, they should protect themselves by asking for more contracted claims; and if these are denied, good faith requires them to make their contest then and there; or later by reissue, if some subsequent excuse for their original failure really turns up. If they do get narrow claims and the broad ones turn out to be invalid, the public will not have been misled, for the narrow claims will stand as a warning as to which everyone must take his chances.

It must, however, be admitted that before Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005, the law, as settled by the lower courts (ourselves included), was otherwise, although, so far as we have found, the Supreme Court had never before discussed the question and sustained such a disclaimer against the objections we have stated; not even in Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 435, 436, 22 S.Ct. 698, 46 L.Ed. 968, which has been often cited as doing so. But the Altoona case cannot by any reasoning be reconciled with the validity of the practice, in spite of certain passages in the opinion on which the plaintiff here relies. The disclaimers added the fly-wheel as a new element; as we have seen, every disclaimer of this type must add a new element, and the court held the claims

bad only because the disclaimers did just that. It is true that the Seventh Circuit in Johnson Laboratories, Inc., v. Meissner Mfg. Co., 98 F.2d 937, and the Ninth—by a divided court—in Payne Furnace & Supply Co. v. Williams-Wallace Co., 117 F.2d 823, have attempted to make a distinction, but with deference we cannot understand the reasoning. The Sixth Circuit has also twice sustained such disclaimers since the Altoona case was decided (Byrne Mfg. Co. v. American Flange & Mfg. Co., 87 F.2d 783; Cincinnati Rubber Mfg. Co. v. Stowe-Woodward, Inc., 111 F.2d 239) but, strangely enough, it did not mention that decision either time, though we are assured that the defendants urged it in their briefs. Perhaps the Sixth must therefore be added to the other two; but in any event the Supreme Court alone can declare what is the present law on the subject.

Judgment affirmed.