## HAZELTINE CORPORATION v. EMERSON TELEVISION–RADIO, Inc., et al.

### No. 253.

Circuit Court of Appeals, Second Circuit.

July 29, 1942.

Laurence B. Dodds, of New York City (Henry T. Kilburn, of New York City, of counsel), for appellant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., and Floyd H. Crews, both of New York City, of counsel), for appellees.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by Hazeltine Corporation from a final decree dismissing its suit for patent infringement. Hazeltine is the owner of the Thompson patent No. 1,710,-035, issued April 23, 1929, on application filed March 13, 1926, for "sound-reproducing instrument." The defendants were Emerson Television-Radio, Inc., manufacturer of the accused "Emerson" radio receivers, Emerson Radio & Phonograph Corporation, seller of them, and an individual, the determination of whose status in the litigation was postponed pursuant to stipulation. The suit was filed in August, 1934. It was not brought on for trial until February, 1941. The defenses were both invalidity and non-infringement, but the district court disposed of the case solely upon the latter ground.

The patent here involved relates to the combination of a sound producing diaphragm and its actuating mechanism with a cabinet to house them. The commercial embodiment of the invention was developed in 1925 and was placed on the market as the Thompson Minuet Receiver. A specimen thereof was put in evidence as exhibit 7. The drawings of Figures 3 and 4 in the patent application filed in March, 1926, were made from this model. It consists of a cabinet having in its front wall a circular opening through which projects the apex of a conical diaphragm which is the loud speaker. This is actuated by a magnet controlled by electrical

impulses from the circuits of a radio receiver. At its base the conical diaphragm has a diameter of 11 or 12 inches. It is mounted inside the cabinet upon a support which also carries the radio receiver. The top and side walls of the cabinet have no openings but the rear wall is accoustically open, although closed against access by a metal screen which the patent refers to as a "reticulated member." At lines 93-104 of page 3 of the specifications, the patentee has summarized his invention as follows: "My said invention provides a compact structure in which the sound reproducer or large diaphragm and the apparatus or mechanism for actuating the same or for supplying energy thereto are combined to form a unitary instrument, and in which the cabinet or casing serving to enclose or house the said apparatus or mechanism is economically employed either as a reflector and baffle, or as a sound chamber and baffle or reflector combined, whereby to improve the operation of said reproducer or diaphragm."

The defendants characterize the alleged invention as merely putting "a loud speaker in a box." If this were all Thompson did, concededly it would not constitute invention. The Farrand-Godley receiver of 1924 had already done that. It placed a loud speaker of the large diaphragm type within one compartment of a cabinet and in another compartment of the same cabinet it put the radio receiver. See also patents issued to Harrison, No. 1,613,609, and to Frederick, No. 1,955,800. The De Forest receiver of 1925 also shows an attempt to combine the loud speaker and the receiver into a unitary structure of pleasing appearance, although the loud speaker and its actuating apparatus were not placed in one compartment. But no one prior to Thompson, Hazeltine urges, had conceived the idea of combining the loud speaker and its actuating mechanism with a cabinet so as to utilize the baffling and sound chamber effects of the cabinet to improve the tonal characteristics of the loud speaker, and so as to produce a unitary, compact and portable radio receiver, with the attendant reduction in manufacturing costs. It is contended that these novel and useful contributions to the art not only prove invention but entitle the patentee to a construction of his claims broad enough to cover the accused radio receivers, which utilize a smaller diaphragm, differently arranged within the cabinet and differently actuated (dynamically instead of magnetically) than did the patentee's embodiment of his invention in the Minuet receiver.

Assuming without decision the validity of the patent, we pass to a consideration of the question of infringement. The claims in suit are 1, 3, 5, 6, 7 and 8. Claims 5 and 7 are relied upon as typical. Claim 5, as originally granted, read as follows: "5. The combination of a large conical diaphragm, with a casing open at opposite ends disposed about the edge of said diaphragm and providing an open sound chamber at the rear of said diaphragm serving to enhance the operation thereof throughout its frequency range." By a disclaimer filed October 22, 1931, the patentee disclaimed from claim 5 everything "except the said combination in which said casing is in effective contact with the peripheral edge of said diaphragm, whereby the passage of sound waves from one side to the other of said diaphragm is substantially eliminated." Claim 1 was similarly disclaimed. Claim 7 reads as follows: "7. The combination of a support, a diaphragm carried thereby, and apparatus for actuating said diaphragm carried by said support, with a cabinet having an opening therein to permit of the reception of said support and the parts thereon within the cabinet, and having an opening therein adapted to register with said diaphragm."

It is entirely clear from the specifications, as well as from exhibit 7, which Hazeltine put in evidence as a physical embodiment of the invention, that Thompson was concerned with improvements in a "large diaphragm" cone type of loud speaker. The first sentence of the specifications so states and the patentee's summary of his invention, already quoted, makes this perfectly plain. The term "large diaphragm" had an accepted meaning in the art.* It meant a diaphragm having a diameter of at least 9 inches. The trial judge made a finding to this effect and, despite the appellant's contention to the contrary, we think the evidence amply supports it. The Emerson receivers use

---

* Otherwise claims 1, 3 and 5, which call for a "large" diaphragm, might well be thought so vague as to be invalid. Cf. B. B. Chemical Co. v. Cataract Chemical Co., 2 Cir., 122 F.2d 526, 530; General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

a diaphragm of 4⅞ inches in diameter. This difference in size is alone enough to establish non-infringement of claims 1, 3, and 5. The Emerson diaphragm is not a "large diaphragm" sound reproducer within the meaning of the patent.

Claims 1 and 5 also require that the cabinet or casing be "disposed about the edge of said diaphragm"; claims 3 and 6 call for an opening in the cabinet wall "in which said diaphragm is disposed"; and claim 8 calls for a cabinet having an opening in the front wall thereof "adapted to receive said diaphragm." The patent drawings and the Minuet receiver show exactly what these quoted phrases mean. The apex of the conical diaphragm extends through a circular aperture in the front wall of the cabinet and a substantial distance beyond the front wall. Thus the cabinet may be described as "disposed about the edge of said diaphragm" or as having an opening in the front wall "adapted to receive said diaphragm" or "in which said diaphragm is disposed." But the quoted phrases are not descriptive of the arrangement used in the accused Emerson receivers. In them the apex of the cone points inwardly from the front wall and the base of the cone lies behind the front wall so that the whole of the diaphragm is within the cabinet. Hence the requirement of these claims that the cabinet be "disposed about" the diaphragm, or have an opening in the front wall "adapted to receive" it, cannot be found in the Emerson receivers. Nor can the Emerson arrangement be deemed an equivalent, since it is the same as that shown in the prior art in Rice Patent No. 1,631,646 and in figure 21 of the Rice and Kellogg paper discussed at the meeting of the Institute of Electrical Engineers in April 1925.

Claim 7, if read literally, would concededly be infringed by the accused receivers, but a literal reading is not permissible if that would result in bringing within the claim structures disclosed in the prior art. Tostevin-Cottie Mfg. Co. v. M. Ettinger Co., 2 Cir., 254 F. 434, 435. The district judge was of opinion that the accused receivers were identical with the prior art. We agree in view of the Rice patent and Rice and Kellogg paper already referred to. The appellant seeks to distinguish the Rice and Kellogg reference because the cabinet they proposed (Figures 33 and 34) had vented sides.

But this was not true of the Rice patent. Accordingly, claim 7 must be limited to a "large diaphragm" cone disposed within the front wall opening as shown in the disclosure of the specifications. So limited it is not infringed. Nor are any of the other claims in suit.

The finding of non-infringement makes unnecessary a decision as to the validity of the claims; but we may add that even had we come to a different conclusion as to infringement, the decree would have to be affirmed since we believe that the "chiseling" disclaimer invalidates the patent under the doctrine of Milcor Steel Co. v. George A. Fuller Co., 2 Cir., 122 F.2d 292, affirmed 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. ——.

Decree affirmed.

CLARK, Circuit Judge (concurring).

In agreeing to this disposition of the case, I do not wish to be understood as in any way intimating a belief in the validity of the patent.