## PALLAS v. NEWTON LINES CO., Inc.

### No. 371.

District Court, N. D. New York.

Aug. 12, 1942.

302

Theodore E. Simonton, of New York City, for plaintiff.

Paul B. Kelly, of Cortland, N. Y., and Roberts, Cushman & Woodberry, both of Boston, Mass. (Charles D. Woodberry and William Gates, Jr., both of Boston, Mass., of counsel), for defendant.

BRYANT, District Judge.

In some respects this is an ordinary patent suit. Plaintiff alleges issuance, validity and infringement of patent. Defendant denies infringement and asserts invalidity of the patent on the usual defenses of prior art and certain prior knowledge and uses. In addition, there are some unconventional issues. Briefly, they are invalidity because of vagueness, because of disclaimer, because plaintiff was not the inventor and because the patent, although taken out in the name of plaintiff, was the property of Shakespeare Line Company and has been assigned to defendant.

The patent in question is 1,999,134. It relates to a process for rapidly drying one or more coats of drying oil applied to fabriform substances, such as threads, strands or braided cords of silk likely to suffer serious deterioration when subjected for a prolonged period to high temperatures, and in controlling that process in such a way as not to cause injury to the fabric. The comparative ranges described in the patent are between 100 degrees and 200 degrees centigrade. It also discloses a specific process for making a fish line which includes a prolonged final bake.

The patent consisted of ten claims. Shortly before commencement of this action the patentee filed a disclaimer. The disclaimer eliminated textile products, paper and fabric from the specifications and claims 1 and 8 in toto and limited claims 2, 3, 4, 5 and 10 to the process of a last bake of the strand material for a period of at least one hour. The quoting of one claim will indicate the effect of the disclaimer. Claim 2 reads: "The process for fabricating a fish line and which process consists in providing for a line strand of material whose tensile strength deteriorates when said strand is subjected to prolonged baking; impregnating said strand with drying oil substantially free from a chemical drier; then baking the impregnated strand in an oxidizing atmosphere; thereupon, applying a coating of drying oil thereon and further baking *for a period of at least one hour* to solidify the strand coating at a controlled temperature not less than one hundred degrees centigrade and not higher than two hundred degrees centigrade, the aggregate baking time being terminated in accordance with the baking temperature to which the strand is actually subjected, whereby to preserve the tensile strength of the strand material against inordinate deterioration during such successive baking periods." The words added by the disclaimer are italicized.

Soon after the commencement of the action, defendant moved to dismiss the complaint upon the ground that the disclaimers were invalid, because they added new elements, and that the filing thereof resulted in an abandonment of the patent. This motion was dismissed. Just prior to the submission of this case the decision in Milcor Steel Company v. Geo. A. Fuller Company, 2 Cir., 122 F.2d 292, was made. It was agreed that decision in this case would await review of that case. It has been affirmed. I hold claims 2, 3, 4, 5, and 10 invalid because of disclaimer. Milcor Steel Company v. Geo. A. Fuller Company, April 27, 1942, 316 U.S. 143, 62 S. Ct. 969, 86 L.Ed. 1332.

Defendant contends that Claims 6, 7, and 9, because of the invalid disclaimers, must fall. It is not necessary to pass specifically upon this point. Regardless of disclaimers, the testimony shows several grounds which prevent recovery. These grounds can be shown more clearly through a chronological statement of facts and happenings.

Shakespeare Line Company was, and is, a large manufacturer of fish lines, tackle, etc. In 1929, it encountered trouble with an enamel line that it had been manu-

facturing. It engaged Dr. Carr, a professor in chemical engineering, to solve its problem. Carr, not being able to devote much time to the work, recommended that Pallas, one of his students, be engaged to work under his supervision. Pallas was so engaged and worked vacations, weekends, holidays, etc., until the spring of 1932. His contract of employment was not specific as to the work he was to do. However, from the testimony it is apparent that he was hired to work principally upon one problem, the improvement of the Shakespeare oiled lines. Mainly, his work was devoted to this problem and phases connected therewith. He started experimenting under the supervision of Carr. He was required to record, daily, his experiments in triplicate, furnishing one copy to Carr and one to Shakespeare, the president of the Company. His experimental work was examined and passed upon by both. Working in this manner, he made a large number of experiments.

When he started, the process of impregnating a fish line with fillers and then baking was old in the art. He admits that he used drying oils free from chemical driers at Carr's suggestion. At first he experimented at low baking temperatures, which was the process in use by the Shakespeare Company. Later he began experimenting with relatively high temperatures. The initiation of this change is in dispute. Carr says that the change was made by his direction. Pallas has no recollection of Carr having made such a suggestion. However, this dispute is immaterial. At that time, the baking of impregnated silks at high temperatures was well known in the art. Even though never tried on fish lines, an application of this known process to a strand of silk suitable for use as a fish line cannot constitute invention. Whether soaking with oil and baking a piece of silk or a strand of silk, the principle is the same. Governing the temperatures and baking time according to impregnations and material, the result will be the same.

Using the Company's time, facilities and materials and working under the supervision of Dr. Carr, Pallas proceeded by a system of trial and error, varying his processes by changes in combination of oils, length and number of impregnations, changes in temperatures, time and number of bakes, etc., and recording the results of each. He started with the known art of waterproofing textiles with oils at high temperatures to speed the drying and increase the hardness of the film and, by patient testing of different oils and mixtures and the times and temperatures of bakes, sought the solution of the objective. Originality is lacking. The results of such routine work are not usually patentable inventions. Ruben Condenser Co. v. Aerovox Corp., 2 Cir., 77 F.2d 266.

In 1930 he reached a process which seemed to be good and the Shakespeare Line Company went into commercial manufacture of lines made according thereto. There is a dispute regarding the time when the Company began this commercial manufacture. The evidence leads to the conclusion that it was in the spring, or summer, of 1930, a period more than two years prior to Pallas' application for patent.

There is some dispute as to the results of this manufacture. Shakespeare testified that the lines generally gave good satisfaction. Pallas said they did not; that many came back because of softening with age and other defects. According to his testimony, in the summer of 1931 he took these returned lines and gave them a final bake of one hour, or more, at temperatures ranging between 100 and 200 degrees centigrade and thereby turned poor lines into good ones. The final bake experiments were not recorded nor reported to the Company. It is this final bake which, in reality, forms the crux of Pallas' claim of invention.

In the spring of 1932 Pallas was discharged. The Shakespeare Company gave him permission to take any acquired knowledge to any competing firm.

In August of that year, he entered the employ of defendant under a contract whereby defendant was to use his claimed secret process during the term of employment. At that time Carr, by letter, advised both defendant and plaintiff that he was the originator of the processes. He, with Pallas' aid, or at least with his acquiescence, negotiated with defendant for a royalty contract. Even though Pallas made no positive admissions of Carr's rights, his acts and letters to and from Carr indicate that he considered Carr either the sole or joint owner of the process. This indication is supported by the fact that later he paid Carr some amounts which Carr designated as royalties and, in 1938, requested Carr to sign an affidavit stating that no part of the invention was his.

On November 8, 1932, Pallas made application for patent. About November 5, 1934, his application was divided and the division resulted in the issuance of the Patent in question and, also, Patent No. 1,999,170.

Patent No. 1,999,170 discloses the process used by the Shakespeare Line Company in its commercial manufacture, beginning in the spring, or summer, of 1930. Clearly it is void because of prior public use. The Patent at issue, with the exception of Claims 6, 7, and 9, before disclaimers was substantially the same as Patent 1,999,170. About the only difference is use of coloring in one. Regardless of disclaimers, the patent in issue, with the possible exception of claims 6, 7, and 9 are invalid because of Shakespeare's prior use and Carr's suggestions.

■ In view of prior art I hold claims 6, 7, and 9 invalid. Claims 6 and 9 differ from the original claims in the patent only in respect to the so-called final bake, and Claim 7 purports to give a kink-proof quality and a transparency because of the final bake. Looking at analogous arts, we find that the Irving Varnish and Insulator Company, in the oil coating and water proofing of textiles and paper products, used high temperatures and the final bake. The bake was, and is, given to complete oxidation and prevent the development of softness in storage. The time of heat treatment for the final coat was upwards of an hour. The Mica Insulator Company, since 1904, in the waterproofing of silks and other materials, has used a process which consists in applying several coats of drying oil and baking at high temperatures. Part of the time a final seasoning bake of from one to two hours was given. This final step is taken when the original bake does not produce a hard non-tacky finish and when necessary to make the cloth flexible, tough, kink-proof and able to avoid white streaks when wrinkled. These processes, with the after bake, are the same processes described in the Patent, including claims 6, 7, and 9.

Even though the processes used by the two named companies were not, and are not, used in the manufacture of fish lines, they are applicable as references of prior use. The problems to be overcome in the manufacture of waterproofing silk, through oil impregnations, with or without driers, and bakings, are the same whether a piece of silk or a strand of silk is used.

I hold that the patent is invalid. My decision is based upon the grounds that the disclosures made by plaintiff did not constitute invention; that the disclosures were in commercial use for more than two years prior to application; and that plaintiff was not the sole inventor of the processes sought to be patented.

In view of these holdings it is not necessary to consider the other issues raised.

Defendant is entitled to judgment.